JOHN C. AND VIRGINIA RUSSELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Russell v. Commissioner
Docket No. 5272-79.
United States Tax Court
T.C. Memo 1981-82; 1981 Tax Ct. Memo LEXIS 662; 41 T.C.M. (CCH) 954; T.C.M. (RIA) 81082; February 24, 1981. Philip J. O'Reilly, for the petitioner. Martha Sullivan, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency of $ 7,491.90 in petitioners' Federal income tax for the taxable year ended December 31, 1975, and an addition to tax of $ 261.43 under section 6651(a) [1] for the late filing of the return for that year. The issues involved are (1) the amount of loss, if any, which petitioner John C. Russell suffered from the disposition of certain stock, (2) if there was a loss, whether it is deductible as a capital or an ordinary loss, and (3) whether the late filing of petitioners' return was due to reasonable cause. *663 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, resided in New York, N.Y., at the time they filed their petition herein. They were granted an automatic extension of time to file their 1975 income tax return until June 15, 1976. The return was filed in an envelope bearing a postmark date of July 29, 1976. Petitioner John C. Russell (hereinafter Russell) was employed by J. N. Russell, Inc. (the corporation), an investment firm, in the positions and at the salaries as follows: Year
Position
Salary
1965
Salesman
$ 4,250
1966
Salesman
5,409
1967
Vice President - Sales
5,442
1968
Vice President - Sales
7,305
1969
Vice President - Floor Broker
8,048
1970
Vice President - Floor Broker
21,119
From 1970 through 1975, he continued such employment as Vice President - Floor Broker and his salary rose to as high as $ 34,370 in 1972 and was $ 31,281.78 in 1975. Russell was 21 years old in 1965. His immediate family owned more than 50 percent of the outstanding stock of the corporation from 1965 to 1975. In 1967, Russell purchased 50 shares of stock of the corporation for $ *664 64,000 and in 1970, an additional 10 shares for $ 18,000. His dominant motive in purchasing these shares was for investment. See footnote 3, infra.
In 1975, the corporation was liquidated. At that time, Russell received $ 26,029.88 in cash plus shares of stock of another company which took over the business of the corporation. OPINION The issues involved herein are purely factual and the burden of proof as to each is on the petitioners. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. They have totally failed to carry their burden. First, petitioners have not established that Russell in fact suffered any loss from the disposition of his shares of the corporation. Although respondent asserts that the petitioners have failed to prove Russell's cost basis in the stock, we have found as a fact that he paid $ 64,000 for the 50 shares acquired in 1967 and $ 18,000 for the 10 shares acquired in 1970. In so doing, we have accepted the testimony of Russell (whom we found to be a credible witness) as to the amounts he paid. [2] On the other hand, the record is insufficient to establish the amount that Russell *665 received upon the disposition of the shares in 1975. Russell merely testified that he received cash and stock of another company. A Form 1099-L (U.S. Information Return for Distributions in Liquidation during Calendar Year) was received in evidence showing cash received of $ 26,029.88 and "shares of liquidating trust," stated to have a "fair market value" of $ 18,281.27. Assuming arguendo that this form was sufficient to establish the amount of cash received, it is clearly insufficient to establish the fair market value of the other property received. See footnote 2, supra. Consequently, we have no basis for determining the amount of loss, if any, which Russell may have suffered. *666 Second, it is clear to us that Russell's dominant motive [3] in purchasing the shares was to make an investment. His testimony made it clear that the corporation would not have gone out of business if the purchases had not been made and that his job was not in any way dependent upon the purchases. In fact, Russell emphasized that his motive was grounded in maintaining a parity of position with his two brothers who also held stock in the corporation. Under these circumstances, the situation falls squarely within the standards laid down in United States v. Generes,405 U.S. 93 (1972). Third, petitioners offered no evidence to explain the delay in the filing of their 1975 return. Consequently, respondent's determination of an addition to tax *667 for late filing under section 6651(a) is sustained. Neubecker v. Commissioner,65 T.C. 577, 586 (1975). Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year at issue.↩
2. Petitioners sought unsuccessfully at trial to introduce several documents bearing on this point. We have reexamined our rulings in respect of such documents and reaffirm them, noting, however, that they contain certain contradictory figures which, had they been admitted, would have cast some doubt on the exact amounts paid. We also note that, while petitioners encountered difficulty in obtaining proof as to the amounts paid as well as the amounts received in 1975 upon the disposition of the shares, such difficulties do not relieve them of their burden of proof. Burnet v. Houston,283 U.S. 223↩ (1931).
3. Since the purchases were prior to March 13, 1978, respondent herein accepts the dominant, as contrasted with the substantial, motive standard, on the basis of Rev. Rul. 78-94, 1978-1 C.B. 58. Cf. W.W. Windle Co. v. Commissioner,65 T.C. 694 (1976), appeal dismissed 550 F.2d 43 (1st Cir. 1977); BellFibre Products Corp. v. Commissioner,T.C. Memo. 1977-42↩.